J-S81032-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: J.E.S., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: E.J.S., FATHER | |
| | No. 1349 EDA 2016 |

Appeal from the Decree April 13, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000483-2015
CP-51-DP-0002303-2013

==================================================

| | |
|---|---|
| IN THE INTEREST OF: K.E.S., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: E.J.S., FATHER | |
| | No. 1352 EDA 2016 |

Appeal from the Decree April 13, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000484-2015
CP-51-DP-0002524-2013

BEFORE:  BOWES, J., MOULTON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:              **FILED DECEMBER 29, 2016**

---

[*] Former Justice specially assigned to the Superior Court.

Appellant, E.J.S. ("Father"), appeals from the April 13, 2016, decrees and orders involuntarily terminating his parental rights to K.E.S. (born in July of 2004), and J.E.S. (born in December of 2009) (collectively, "Children") pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b), and changing Children's permanency goal to adoption under Section 6351 of the Juvenile Act, 42 Pa.C.S. § 6351.[1] We affirm.

The relevant facts and procedural history of this case are as follows: On November 17, 2013, the parties first became known to the Department of Human Services ("DHS") as a result of a General Protective Services ("GPS") report alleging that the police placed Mother into custody after finding her intoxicated and unable to care for J.E.S. On the same day, DHS obtained an Order of Protective Custody ("OPC") for J.E.S. and placed him in a foster home through Juvenile Justice Center. DHS also received a supplemental GPS report that same day, alleging Father had custodial care of K.E.S. and there was no functional kitchen or food in Father's home. DHS discovered that K.E.S. has repeated the same school grade twice because of truancy. DHS also learned that Father and Mother have a history of domestic violence and Mother has a Stay Away Order against Father.

_____

[1] By separate decrees and orders on the same date, the trial court involuntarily terminated the parental rights of M.C. ("Mother"), the natural mother of Children. Mother did not file notices of appeal, and she is not a party to this current appeal.

On November 27, 2013, the trial court adjudicated J.E.S. dependent and committed him to DHS. On December 19, 2013, DHS filed a dependency petition for K.E.S., and on January 13, 2014, the trial court adjudicated K.E.S. dependent, as well as ordered him to remain in Father's home under the care of Father's paramour, R.S. ("Paramour"), with DHS supervision. This case was transferred to Community Umbrella Agency ("CUA") Turning Points for Children to provide services for the family on January 29, 2014. On February 20, 2014, CUA held an initial Single Case Plan ("SCP") meeting for the family. Father's SCP objectives were: (1) to participate in a drug and alcohol assessment and submit to random drug screens at Clinical Evaluation Unit ("CEU"); (2) to comply with the recommendations made as a result of the drug and alcohol assessment; (3) to attend parenting classes; (4) to complete intake process and attend domestic violence counseling; (5) to attend visitations with Children; (6) to provide and transfer Supplemental Security Income ("SSI") for the needs of K.E.S. to Paramour; and (7) to maintain appropriate housing.

At a permanency review hearing on May 28, 2014, Mother obtained custody of Children with DHS supervision, and Father was given unsupervised day visits with Children. On July 29, 2014, DHS obtained an OPC for Children and placed them in a foster home. At a shelter care hearing on July 31, 2014, Children were both fully committed to DHS custody.

Several SCP meetings and permanency review hearings were held thereafter through 2015. During this time, Father's SCP objectives were revised and court ordered, requiring him: (1) to attend his scheduled drug and alcohol assessment and submit to three random drug screens at CEU; (2) to comply with court orders and participate in recommended services; (3) to attend parenting classes; (4) to complete domestic violence counseling; (5) to attend visitations with Children; (6) to maintain appropriate housing; (7) to provide medical documentation for his prescriptions; (8) to participate in a psychological evaluation; and (9) to comply with grievance counseling.

On August 4, 2015, DHS filed petitions to involuntarily terminate Father's and Mother's parental rights to Children. On April 13, 2016, the trial court held a hearing on the petitions. At the hearing, DHS presented the testimony of Aisha Erwin, a CUA case manager for Turning Points for Children, and Noel Cord, a CUA permanency specialist at Turning Points for Children. Father was present in the courtroom with counsel and testified on his own behalf. Mother failed to appear at the hearing, but was represented by counsel. That same day, the trial court entered decrees and orders terminating Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b) and changing the permanency goal to adoption.

On May 3, 2016, Father timely filed notices of appeal, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P.

1925(a)(2)(i) and (b).  This Court consolidated Father's appeals *sua sponte* on June 3, 2016.  Father raises the following issues, which we set forth verbatim.

> 1. Did the Trial Court err in terminating the Appellant's parental rights under 23 Pa.C.S. Section 2511?
>
> 2. Did the Trial Court err in finding that termination of father's parental rights best served the children's developmental, physical and emotional needs under 23 Pa.C.S. Section 2511(b)?
>
> 3. Did the Trial Court err in changing the children's goal to adoption?

Father's Brief at vi.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 616 Pa. 309, 47 A.3d 817, 826 (2012).  "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id*.  "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id*.  The trial court's decision, however, should not be reversed merely because the record would support a different result. *Id*. at 827.  We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *See In re R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (2010) (citations omitted).

*In re T.S.M.*, 620 Pa. 602, 71 A.3d 251, 267 (2013).  "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In*

*re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa. Super. 2003) (citation omitted).

Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, controls the termination of parental rights and requires a bifurcated analysis, as follows.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*).

In the case *sub judice*, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8), as well as (b).

We have long held that, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a), well as Section 2511(b). ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we analyze the court's termination order pursuant to subsections 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> > (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> ***
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

We first examine the trial court's termination of Father's parental rights under Section 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa. Super. 2015) (quoting *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002)).

Further, this Court has stated that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *In re A.L.D.*, *supra*. A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.* at 340.

On appeal, Father first argues that the trial court erred in terminating his parental rights because DHS failed to present clear and convincing evidence that the "causes of the incapacity, abuse, neglect, or refusal cannot or will not be remedied." Father's Brief at 6. Father contends that he was compliant with his SCP objectives for over three months before the filing of the termination petitions. *Id*. Specifically, Father claims that he regularly

visited Children, presented a certificate showing completion of an anger management program, had negative drug screens, did not require any treatment for drugs or alcohol, obtained appropriate housing, and completed a healthy relationships class. *Id*.

After a thorough review of the record in this matter, we conclude that the trial court did not abuse its discretion by involuntarily terminating Father's parental rights to Children. During the termination hearing, the CUA case manager, Ms. Erwin, provided the trial court with the history of the case concerning Children's removal and the circumstances leading to Children's placement in foster care, where they currently remain. Ms. Erwin listed Father's SCP objectives. Ms. Erwin informed the trial court that Father was present at the SCP meetings, where she explained the objectives and expectations set for him. Notes of Testimony ("N.T."), 4/13/16, at 22. Ms. Erwin informed the trial court that Mother and Father currently reside together. *Id*. at 21. Regarding housing, Ms. Erwin stated that since the last court hearing on December 15, 2015, she and Ms. Cord, the permanency specialist, scheduled and confirmed three home visits with Father, but he was not present when she arrived, and she was unable to evaluate the conditions of the house. *Id*. at 20-21.

Ms. Erwin testified that Father was court ordered to go back to CEU because he tested positive for benzodiazepines. *Id*. at 24-25. Ms. Erwin testified that Father failed to go to CEU for three random drug screens, and

missed his court-ordered drug assessment. *Id*. at 23-25. Ms. Erwin stated that Father failed to provide her with any documentation for his prescriptions as ordered by the court and directed by his SCP. *Id*. at 37. She further stated that Father only provided her with an old prescription bottle with a faded label, which prevented her from determining the dosage or the prescribing doctor's name. *Id*. Ms. Erwin testified that the bottle did not look like it was recently prescribed. *Id*. Ms. Erwin stated that she is unable to conclude if Father is still using drugs. *Id*. at 35.

Ms. Erwin informed the trial court that Father was referred to complete parenting classes, grievance counseling, domestic violence counseling, anger management classes, and a psychological evaluation. *Id*. at 27. Ms. Erwin testified that, although Father completed classes in Healthy Relationships and participated in a psychological evaluation, Father failed to attend anger management classes, grievance counseling and parenting classes. *Id*. Ms. Erwin also testified that, throughout the life of this case, Father has always sporadically visited Children. *Id*. at 30. Ms. Erwin stated that, since the last hearing, Father only attended seven visitations out of eighteen scheduled visits with Children. *Id*. at 28-30. Ms. Erwin stated that she is uncertain if Father is capable of ensuring that Children's basic needs are satisfied. *Id*. at 35.

The CUA permanency specialist, Ms. Cord, testified that throughout the life of the case, she has made nine home visits and seventeen attempted

home visits. *Id*. at 43. Ms. Cord testified that she last visited Father's house on December 9, 2015, and did a walk-through of the home. *Id*. at 46. Ms. Cord testified that she found the house appropriate for Children. *Id*. at 46-47. Ms. Cord also testified that after the December 15, 2015, hearing, she scheduled and confirmed three visits with Father for December 29, 2015, January 15, 2016, and February 28, 2016, but she was unable to get into the home because no one was there. *Id*. at 44. Since Mother and Father have a history of domestic violence, Ms. Cord opined that she did not find it appropriate that they live together. *Id*. at 46-48.

At the hearing, Father testified that parenting classes were suggested to him, but he was never given a date or time. *Id*. at 50. Father denied receiving any paperwork or phone call to go to a drug screen at the CEU. *Id*. at 51. Father testified that he missed two visits with Children due to the weather and denied missing eleven visits. *Id*. at 52. Father stated his doctor prescribed medication for him in 2014, but he is currently not on any medication. *Id*. at 60-61. Father submitted to the trial court his psychological evaluation and a certificate evidencing he completed anger management classes on November 13, 2014.

With respect to Section 2511(a)(2), the trial court concluded that Father failed to perform his parental duties and place himself in a position to parent Children. Trial Court Opinion ("T.C.O."), 6/10/16, at 6. The trial court noted that Children have been in foster care since July 29, 2014. *Id*.

The trial court found the evidence demonstrated a pattern of noncompliance by Father with his SCP objectives and court orders. *Id*. With regard to Father's housing objectives, the trial court noted that CUA made nine home visits and seventeen attempts to visit and assess his home, but when CUA arrived no one was there. *Id*. The trial court also opined that Father living with Mother is inappropriate based on their history of domestic violence. *Id*. The trial court noted that Father was ordered to take random drug screens and obtain a drug assessment because he had tested positive for benzodiazepines in the past. *Id*. However, Father missed all three random drug screens and failed to complete a drug and alcohol assessment. *Id*. Furthermore, Father neither provided the trial court with documentation for his prescription nor the identity of the doctor; instead, he produced an old and faded medicine bottle, which was not from a current prescription. *Id*.

The trial court further noted that it took Father twenty-one months to complete domestic violence classes, and CUA referred Father for parenting classes six times, but he refused to attend. *Id*. Because Father signed an SCP establishing an objective for parenting classes and attended court hearings reiterating that objective, the trial court found Father's testimony unconvincing that no one ever informed him that parenting classes were an objective. *Id*. The trial court noted that Father has a history of visiting Children sporadically. *Id*. Since the last hearing on December 15, 2015, Father attended only seven out of eighteen scheduled visits and canceled

visits the day they were to occur. *Id*. The trial court reasoned that Father's conduct and failure to comply with court orders and his SCP objectives demonstrate his inability to remedy the causes of his incapacity to provide Children with essential parental care, control, or subsistence necessary for their physical and mental well-being. *Id*. Because Father cannot fulfill Children's need for permanency, the trial court determined that termination was proper under Section 2511(a)(2). *Id*.

Father's argument regarding Section 2511(a)(2) essentially seeks for this Court to make credibility and weight determinations different from those of the trial court. The testimony presented at the termination hearing establishes that Father was aware of his SCP goals, but failed to comply despite ample amount of time given to do so. It is clear from the record that Father is unwilling to rectify the conditions that led to the removal of Children. Accordingly, the record supports the trial court's conclusion that he is incapable of providing Children with parental care, control, or subsistence necessary for their physical or mental well-being, and it was reasonable for the trial court to determine that Father will not, or cannot, remedy this incapacity. Thus, the trial court did not abuse its discretion in terminating Father's parental rights under Section 2511(a)(2). *In re Adoption of S.P.*, 616 Pa. at 325-26, 47 A.3d at 826-27.

We next determine whether termination was proper under Section 2511(b). With regard to Section 2511(b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, 620 A.2d [481, 485 (Pa. 1993)] this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791. However, as discussed below, evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, 71 A.3d at 267. "[I]n cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010) (citations omitted).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted).

Here, Father argues the trial court erred by finding under 23 Pa.C.S. § 2511(b) that termination of his parental rights best serves Children's

developmental, physical and emotional needs. Father's Brief at 8. Father contends the CUA worker testified that Father regularly visited Children and bonded with them. *Id*. As such, Father claims that terminating his parental rights could not be in the best interest of Children as it would destroy the only love, comfort, security, and stability that they have ever known. *Id*. We conclude that Father's argument has no merit.

With regard to Section 2511(b), the trial court noted that Children have been in DHS custody since July 29, 2014, because Father was unable to parent them. T.C.O., 6/10/16, at 7. The trial court concluded:

> Father visits the Children inconsistently, and has made only seven of the last eighteen scheduled visits. Throughout the life of this case, Father has sporadically visited with the Children. [K.E.S.] does not want to be reunified with Father. [J.E.S.] never asks for Father when Father is absent. The Children do not have a parental bond with Father, and would not suffer irreparable harm if his rights were terminated. Foster Parents provide the Children with a safe and permanent home. The Children have a loving bond with Foster Parents, and would be irreparably harmed if removed from their care. It would be in the Children's best interest to terminate Father's parental rights. Consequently, the [trial] court did not abuse its discretion when it found that it was clearly and convincingly established that there was no positive parental bond, and that termination of Father's parental rights would not destroy an existing beneficial relationship.

*Id.* at 10 (citations to record omitted).

The testimony of Ms. Erwin supports the trial court's findings. Ms. Erwin stated that she supervised the visits with Children. N.T., 4/13/16, at 42. Ms. Erwin noted that throughout the life of the case, Father sporadically visited Children. *Id*. at 30. According to Ms. Erwin, K.E.S. informed her

- 15 -

that Father told him he had to take a drug test, which she found inappropriate. *Id*. at 31. Ms. Erwin further testified that after the December 15, 2015, hearing, K.E.S. has been very nonchalant with Father when he used to be happy to see him. *Id*. at 42-43. Ms. Erwin opined that K.E.S. has grown distant because he is starting to realize what is occuring and is now doubtful of Father. *Id*. She stated that during Father's visits, K.E.S. does not interact or engage with Father; instead, he sits on the end of the couch with his headphones on and plays with his cellphone the entire time. *Id*. at 30. Ms. Erwin also observed that K.E.S. did not want to be touched or hugged by Father. *Id*.

Ms. Erwin informed the trial court that K.E.S. recently expressed to her that he does not want to return back to his parents and is comfortable where he is. *Id*. Ms. Erwin stated that K.E.S. was very upset over the thought of leaving his kinship home. *Id*. at 32. Ms. Erwin testified that K.E.S. had a tough time adjusting to his foster home but now loves it there. *Id*. She added that K.E.S. has a good relationship with his Foster Parents and is very bonded with them. *Id*. Ms. Erwin does not believe that there is a positive bond between K.E.S. and Father. *Id*. She opined that K.E.S. would not suffer irreparable harm if Father's parental rights were terminated. *Id*. Ms. Erwin concluded that it would be in the best interest of K.E.S. for the trial court to terminate Father's parental rights and change the permanency goal to adoption. *Id*. at 34.

Ms. Erwin stated that during Father's visits, J.E.S. interacted, hugged, and played with Father; however, his relationship and/or interaction with Father is no different from his relationship and/or interaction with her or any other DHS/CUA worker. *Id*. at 33. Ms. Erwin testified that when J.E.S. is at his foster home, he does not ask for Mother or Father and is very bonded with his Foster Parents. *Id*. Although J.E.S. does not call his Foster Parents, "Mom" and "Dad," he is very close with them and would suffer irreparable harm if he was removed from his foster home. *Id*. at 33-34. Ms. Erwin further stated that J.E.S. would not suffer irreparable harm if Father's parental rights were terminated. *Id*. She does not believe that there is a positive bond between J.E.S. and Father. *Id*. Ms. Erwin concluded that it would be in the best interest of J.E.S. to terminate Father's parental rights and change the permanency goal to adoption. *Id*. at 34.

Based on the foregoing testimony and the totality of the record evidence, we agree with the trial court that involuntarily terminating Father's parental rights would best serve the developmental, physical and emotional needs, and welfare of Children. In addition, we discern no abuse of discretion by the court in concluding that there is no positive parental bond between Children and Father that, if severed, would cause a detrimental effect on them. As such, the trial court did not abuse its discretion in terminating Father's parental rights to Children pursuant to Section 2511(b). Therefore, Father's second issue fails. *See In re B., N.M.*, 856 A.2d 847,

856 (Pa. Super. 2004) (stating that "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment").

Next, we address the change of the permanency goal for Children to adoption. Father argues that the trial court erred in granting a goal change to adoption. Father's Brief at 9. Father claims that because he was compliant with his SCP objectives, the goal should have never been changed to adoption. *Id*. We disagree.

This Court has stated:

When reviewing an order regarding the change of a placement goal of a dependent child pursuant to the Juvenile Act, 42 Pa. C.S.A. § 6301, *et seq*., our standard of review is abuse of discretion. When reviewing such a decision, we are bound by the facts as found by the trial court unless they are not supported in the record.

*In re B.S.*, 861 A.2d 974, 976 (Pa. Super. 2004) (citation omitted).

In order to conclude that the trial court abused its discretion, we must determine that the court's judgment was manifestly unreasonable, that the court did not apply the law, or that the court's action was a result of partiality, prejudice, bias or ill will, as shown by the record. We are bound by the trial court's findings of fact that have support in the record. The trial court, not the appellate court, is charged with the responsibilities of evaluating credibility of the witnesses and resolving any conflicts in the testimony. In carrying out these responsibilities, the trial court is free to believe all, part, or none of the evidence. When the trial court's findings are supported by competent evidence of record, we will affirm even if the record could also support an opposite result.

- 18 -

*In re A.K.*, 936 A.2d 528, 533 (Pa. Super. 2007).

Section 6351(f) of the Juvenile Act sets forth the following pertinent inquiries for the reviewing court:

**(f) Matters to be determined at permanency hearing.—**

At each permanency hearing, a court shall determine all of the following:

(1) The continuing necessity for and appropriateness of the placement.

(2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

(3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.

(4) The appropriateness and feasibility of the current placement goal for the child.

(5) The likely date by which the placement goal for the child might be achieved.

(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.

(6) Whether the child is safe.

. . .

(9) If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights

and to identify, recruit, process and approve a qualified family to adopt the child unless:

> (i) the child is being cared for by a relative best suited to the physical, mental and moral welfare of the child;

> (ii) the county agency has documented a compelling reason for determining that filing a petition to terminate parental rights would not serve the needs and welfare of the child; or

> (iii) the child's family has not been provided with necessary services to achieve the safe return to the child's parent, guardian or custodian within the time frames set forth in the permanency plan.

42 Pa.C.S. § 6351(f)(1)-(6), (9).

> In addition:

> The trial court must focus on the child and determine the goal with reference to the child's best interests, not those of the parents. "Safety, permanency, and well-being of the child must take precedence over **all** other considerations." Further, at the review hearing for a dependent child who has been removed from the parental home, the court must consider the statutorily mandated factors. "These statutory mandates clearly place the trial court's focus on the best interests of the child."

*In re S.B.*, 943 A.2d 973, 978 (Pa. Super. 2008) (emphasis in original) (citations and quotations omitted).

In the case *sub judice*, the trial court found that CUA and DHS have made reasonable efforts to provide services to Father in order to reunify him with Children, but Father has not been compliant with court orders and has not successfully completed all of his SCP objectives. T.C.O., 6/10/16, at 5, 11. The trial court specifically noted that Father has not completed parenting classes, he has not undergone a drug and alcohol assessment or

random drug screens, and he has made only seven of the last eighteen scheduled visitations. *Id*. at 10-11. The trial court further determined that Father's housing is inappropriate because Mother, a past domestic violence victim of Father's, is currently living there. *Id*. at 11. Based on the credible testimony of the CUA caseworkers, the trial court found that the evidence confirmed Children do not have a positive bond with Father, and Father is not ready, willing, or able to care for Children at this time. *Id*. Because Foster Parents have a loving bond with Children, and provide a safe and permanent home, the trial court concluded that it would be in the best interest of Children to change their permanency goal to adoption, to allow Foster Parents to adopt them. *Id*.

As such, the record reflects that the trial court appropriately considered Children's best interest in deciding whether to change the permanency goal to adoption. The competent evidence in the record supports the trial court's determinations. Thus, we will not disturb them. *See In re M.G. & J.G.*, 855 A.2d at 73-74.

After careful review, we affirm the decrees and orders terminating Father's parental rights on the basis of Section 2511(a)(2) and (b), and changing the permanency goal for Children to adoption under Section 6351 of the Juvenile Act.

Decrees and Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/29/2016</u>